SMITH, Justice.
 

 Jennifer Pera Jenkins and John H. Jenkins appeal from an order of the Madison Circuit Court granting the motion to compel arbitration filed by Atelier Homes, Inc., and Frank Wallace. We reverse and remand.
 

 I. Facts and Procedural History
 

 On May 4, 2009, the Jenkinses filed a complaint against Atelier Homes, Inc.; Frank Wallace (“Wallace”); Green Mountain Construction, Inc.; Frakes Insulation & Fireplaces, Inc.; and Juan J. Barcenas d/b/a Morro’s Masonry (“Barcenas”). The complaint alleged, in pertinent part, that, in September 2005, Atelier Homes, Inc., “by and through its designated representative, Wallace, obtained a building permit from the City of Huntsville ... to construct a residence ... for the [Jenkinses]”; that Atelier Homes, Inc., and Wallace “verbally represented to the [Jenkinses] that this residence was constructed to meet or exceed all of the best standards for residential construction in Huntsville”; that Atelier Homes, Inc., and Wallace “represented to the [Jenkinses] that everything in the [residence] would meet or exceed the building code requirements of the City of Huntsville before the [residence] was finished”; and that “the installation of the block foundation and brick veneer exterior was subcontracted by Atelier Homes[, Inc.,] and Wallace to [Barce-nas].”
 

 On May 1, 2006, the Jenkinses closed on the purchase of the residence. Shortly after moving into the residence, the Jen-kinses noticed “water leaking through the vent for the range in the kitchen.” According to the complaint, a licensed structural engineer examined the residence and discovered numerous “defects and building code violations.” Thereafter, the Jenkins-es presented two separate written requests to Atelier Homes, Inc., and Wallace requesting that they “cure the defects and deficiencies” in the residence; however, the Jenkinses claim, Atelier Homes, Inc., and Wallace failed to respond to either of the requests for repairs.
 

 The complaint stated the following counts against Atelier Homes, Inc., and Wallace: suppression; reckless misrepresentation; fraudulent misrepresentation; innocent misrepresentation; negligence; wantonness; breach of the implied warranty of habitability; breach of the implied warranty of good workmanship; and violations of the Deceptive Trade Practices Act, § 8-19-1 et seq., Ala.Code 1975.
 

 On June 15, 2009, Atelier Homes, Inc., and Wallace moved the trial court to compel arbitration of the Jenkinses’ claims against them and to stay the trial court proceedings pending arbitration; defendants Green Mountain Construction, Inc., Frakes Insulation & Fireplaces, Inc., and Barcenas neither joined Atelier Homes, Inc., and Wallace’s motion to compel arbitration nor did they, individually or collectively, file separate motions to compel arbitration. In their motion, Atelier Homes, Inc., and Wallace contended that the Jen-kinses “entered into a contract for the construction of a residence in Madison County” and that, “[i]n the construction
 
 *507
 
 contract, the Jenkins[es] agreed to arbitrate any disputes between them and [Atelier Homes, Inc., and Wallace].”
 

 Atelier Homes, Inc., and Wallace attached certain exhibits to their motion, including the affidavit of Adam Wallace. In his affidavit, Adam Wallace testified, in pertinent part:
 

 “2. I am the Operations Manager of Atelier Homes, Inc. and Atelier Custom Homes, L.L.C. (collectively ‘Atelier Homes’), and I am fully authorized to make this affidavit on behalf of these entities.
 

 “3. In my present position, I am a custodian of Atelier Homes’ books and records concerning the business dealings between
 
 Atelier Custom Homes, L.L.C.
 
 and John H. Jenkins and Jennifer Pera Jenkins (the ‘Jenkins’), and the transactions alleged as the basis of the above-styled action. I have reviewed said business books and records.
 

 “4. Said books and records of Atelier Custom Homes, L.L.C. were made in the ordinary course of the business of, and it was the regular course of said business to make such books and records. Said books and records were made at the time of the transaction, occurrence or event referred to therein or were made within a reasonable time thereafter, and said books and records are kept under the care, supervision, and/or control of me and other employees or agents of Atelier Custom Homes, L.L.C.
 

 “5. I am competent to testify to the matters set forth in this affidavit, which are based upon my review of said books and records of Atelier Custom Homes, L.L.C. and/or upon my own personal knowledge.
 

 “6. The Jenkins filed the present action seeking to recover damages related to the construction of a residence in Madison County, Alabama. (See generally Compl.).
 

 “7. The contract for construction of the residence between
 
 Atelier Custom Homes, L.L.C.
 
 and the Jenkins provided that
 
 Atelier Custom Homes, L.L.C.
 
 would construct a residence, subject to certain terms and conditions. A true and correct copy of the unexecuted Contractor Agreement (the ‘Contract’) is attached hereto as Exhibit 1. The executed Contract is currently lost. I have conducted a diligent search at every place the executed Contract would likely be found and have not located the Contract to date. Atelier Homes has not intentionally or negligently lost or destroyed the Contract. A true and correct copy of the executed Contract was provided to the Jenkins and should be in their custody or control. I will continue to diligently search for the executed Contract and, if located, will supplement this record with the document.
 

 “8. As part of the Contract, the Jenkins entered into an arbitration agreement. The arbitration clause present in the Contract provides ‘[a]ll disputes hereunder shall be resolved by binding arbitration in accordance with rules of the American Arbitration Association.’ (See Contract at Article 5, ¶ 9).
 

 “9. The Jenkins failed to submit this dispute to arbitration prior to filing suit, notwithstanding the arbitration clause.
 

 “10. The Contract contains a written agreement to arbitrate and the Contract involved interstate commerce. Certain goods, funds, and documents crossed state lines in connection with the performance of the contract. For example, payments remitted by the Jenkins to Atelier Homes and by Atelier Homes to various vendors, suppliers, retailers, or subcontractors were made and applied using the interstate banking network.
 

 
 *508
 
 In addition, the transaction involved interstate commerce because Atelier Custom Homes, L.L.C. and/or other persons or entities purchased substantial quantities of goods used in the construction of the house that have moved in interstate commerce.”
 

 (Emphasis added.)
 

 Atelier Homes, Inc., and Wallace also attached to their motion a copy of the “unexecuted” contract, which is labeled as “Contractor Agreement” (“the contract”). Article
 
 5,
 
 paragraph 9, of the contract (“the arbitration clause”) provides: “All disputes hereunder shall be resolved by binding arbitration in accordance with rules of the American Arbitration Association.”
 

 After the Jenkinses filed a response to the motion to compel arbitration, the trial court, on July 22, 2009, entered an order compelling arbitration of the Jenkinses’ claims against Atelier Homes, Inc., and Wallace and staying the trial court proceedings pending resolution of the arbitration proceeding.
 
 [1]
 
 On August 11, 2009, the Jenkinses filed a “motion to reconsider.” It appears from the language of the motion to reconsider that the Jenkinses believed the trial court’s July 22, 2009, order compelled arbitration of their claims against
 
 all
 
 the defendants; specifically, the Jen-kinses argued that
 

 “[Barcenas], Frakes Insulation & Fireplaces, Inc. and Green Mountain Construction, Inc. are not parties to the alleged contract before the Court and they have not filed a Motion to Compel Arbitration in this matter. The [Jen-kinses] have alleged direct claims against these contractors and these parties have not moved to compel arbitration. Therefore, it is error for the Court to unilaterally compel arbitration of the claims against these Defendants.”
 

 On August 18, 2009, Barcenas filed a document entitled “opposition to plaintiffs’ motion to reconsider order compelling arbitration,” in which he asserted that the trial court should deny the Jenkinses’ motion to reconsider. Additionally, Barcenas stated:
 

 “[The Jenkinses] assert that Barcenas did not previously formally file a Motion to Compel arbitration of this matter. Therefore, let this Response in Opposition to the [Jenkinses’] Motion to Reconsider suffice [the Jenkinses’] request for such formality.”
 

 On August 20, 2009, the trial court entered an order “reaffirming] its Order of July 22, 2009.” In that order, the trial court stated, among other things:
 

 “[T]his Court entered an Order on June 16, 2009, wherein the [Jenkinses] were ordered to respond in writing to the motion of the Defendants, Atelier Homes[, Inc.,] and Frank Wallace, concerning a motion to compel arbitration and to stay proceedings in this matter. Any opposition filed by the [Jenkinses] would then result in the Defendants (meaning Atelier Homes, Inc. and Frank Wallace) being able to supply their own responsive brief and supporting authorities to the Court. The [Jenkinses] timely filed an objection to the motion to compel arbitration, but the Court later entered an Order on July 22, 2009, compelling the request for arbitration as submitted by the named Defendants above [Atelier Homes, Inc., and Wallace]. The Court made this ruling prior
 
 *509
 
 to any further reply from the initial Movants and did not deem it necessary to receive any reply from any additional Defendants, although Defendant [Barce-nas] has since filed his own response wherein he joins the Movants’ motion to compel arbitration and stay these proceedings.”
 
 [2]
 

 The Jenkinses appeal.
 

 II. Standard of Review
 

 ‘“We review the trial court’s grant or denial of a motion to compel arbitration
 
 de novo.’ McKay Bldg. Co. v. Juliano,
 
 949 So.2d 882, 884 (Ala.2006) (citing
 
 Bowen v. Security Pest Control, Inc.,
 
 879 So.2d 1189, 1141 (Ala.2003)). ‘ “Initially, the party seeking to compel arbitration must prove 1) the existence of a contract calling for arbitration, and 2) that the contract ‘is “a contract evidencing a transaction involving commerce” within the meaning of the Federal Arbitration Act (FAA).’ ” ’
 
 Owens v. Coosa Valley Health Care, Inc.,
 
 890 So.2d 988, 986 (Ala.2004) (quoting
 
 Hudson v. Outlet Rental Car Sales, Inc.,
 
 876 So.2d 455, 457 (Ala.2003), quoting in turn
 
 Citizens Bank v. Alafabco, Inc.,
 
 539 U.S. 52, 53, 123 S.Ct. 2037, 156 L.Ed.2d 46 (2003), quoting in turn 9 U.S.C. § 2). ‘The moving party “must ‘ “produce some evidence which tends to establish its claim.” ’ ” ’
 
 Edwards v. Costner,
 
 979 So.2d 757, 761 (Ala.2007) (quoting
 
 Wolff Motor Co. v. White,
 
 869 So.2d 1129, 1131 (Ala.2003), quoting in turn
 
 Jim Burke Auto., Inc. v. Beavers,
 
 674 So.2d 1260, 1265 (Ala.1995), quoting in turn
 
 In re American Freight Sys., Inc.,
 
 164 B.R. 341, 345 (D.Kan.1994)). Finally, ‘[o]nce the moving party has supported his or her motion to compel arbitration, the nonmovant then has the burden to present evidence tending to show that the arbitration agreement is invalid or inapplicable to the case.’
 
 McKay,
 
 949 So.2d at 884 (citing
 
 Polaris Sales, Inc. v. Heritage Imports, Inc.,
 
 879 So.2d 1129, 1132 (Ala.2003)).”
 

 Johnson v. Jefferson County Racing Ass’n,
 
 1 So.3d 960, 963 (Ala.2008).
 

 III. Issues
 

 The dispositive issues may be summarized as follows: (1) whether the movants, Atelier Homes, Inc., and Wallace, met their initial burden in moving to compel arbitration of the Jenkinses’ claims; (2) whether Atelier Homes, Inc., and Wallace, as nonsignatories to the contract, may enforce the arbitration clause; and (3) whether the contract was void and, if so, whether that renders all provisions of the contract unenforceable.
 

 TV. Discussion
 

 A. Whether the movants met their initial evidentiary burden
 

 As the parties seeking to compel arbitration, Atelier Homes, Inc., and Wallace had the burden of proving the existence of a contract calling for arbitration and that the contract is a contract evidencing a transaction involving commerce.
 
 See Johnson, supra.
 
 As noted, the movants supported the motion to compel arbitration
 
 *510
 
 with, among other things, the affidavit of Adam Wallace, in which he testified that the Jenkinses entered into a contract “providing] that
 
 Atelier Custom Homes, L.L.C.
 
 would construct a residence [for the Jenkinses]” (emphasis added); that the contract contains an arbitration clause providing that “[a]ll disputes hereunder shall be resolved by binding arbitration”; and that the transaction “involved interstate commerce” because, he said, “[c]ertain goods, funds, and documents crossed state lines in connection with the performance of the contract.” We conclude that the evidence presented by the movants was sufficient to meet their initial evidentiary burden in moving to compel arbitration.
 

 B. Whether the movants may enforce the arbitration clause
 

 In opposing arbitration, the Jen-kinses contend, among other things, that “an arbitration provision in a contract is generally enforceable only by the signatories of the contract.” The Jenkinses’ brief, p. 14 (citing
 
 Smith v. Mark Dodge, Inc.,
 
 934 So.2d 875 (Ala.2006)).
 
 [3]
 
 Conversely, the movants contend that, under the doctrine of equitable estoppel, nonsignatories to a contract “can enforce an arbitration provision when the claims against the [nonsignatories] are ‘intimately founded in and intertwined with’ the underlying contract obligations.” Atelier Homes, Inc., and Wallace’s brief, p. 28 (quoting
 
 Smith,
 
 934 So.2d at 380).
 

 In
 
 Smith v. Mark Dodge, Inc.,
 
 this Court stated:
 

 “A party typically manifests its assent to arbitrate a dispute by signing the contract containing the arbitration provision.
 
 Ex parte Stamey,
 
 776 So.2d 85, 88-89 (Ala.2000). One of the key exceptions to this rule is the theory of equitable estoppel, under which a nonsignatory can enforce an arbitration provision when the claims against the nonsignato-ry are ‘ “ ‘intimately founded in and intertwined with’ ” ’ the underlying contract obligations.
 
 Stamey,
 
 776 So.2d at 89 (quoting
 
 Sunkist Soft Drinks, Inc. v. Sunkist Growers, Inc.,
 
 10 F.3d 753, 757 (11th Cir.1993), quoting in turn
 
 McBro Planning & Dev. Co. v. Triangle Elec. Constr. Co.,
 
 741 F.2d 342, 344 (11th Cir.1984)).
 

 “This Court has crafted one exception to
 
 that
 
 exception: unless the arbitration provision contains sufficiently broad language that indicates that the nonsignato-ry was contemplated as a party, we have repeatedly held that the nonsignatory lacks ‘standing1 to enforce the arbitra
 
 *511
 
 tion agreement.
 
 Med Ctr. Cars, Inc. v. Smith,
 
 727 So.2d 9, 19 (Ala.1998);
 
 Ex parte Isbell,
 
 708 So.2d 571, 581 (Ala.1997);
 
 Ex parte Jones,
 
 686 So.2d 1166, 1168 (Ala.1996); and
 
 Ex parte Jones,
 
 628 So.2d 316, 317 (Ala.1993). Where ‘the language of the arbitration provisions limited arbitration to the signing parties,’ this Court has not allowed the claims against the nonsignatories to be arbitrated.
 
 Stamey,
 
 776 So.2d at 89.
 

 “If an arbitration agreement is written in broad language so that it applies to ‘[a]ll disputes, claims or controversies arising from or relating to
 
 this Contract or the relationships which result from this Contract,’ Ex parte Napier,
 
 723 So.2d 49, 51 (Ala. 1998) (emphasis added), or even in slightly narrower language so that it applies to ‘ALL DISPUTES, CLAIMS OR CONTROVERSIES ARISING FROM OR RELATING TO
 
 THIS CONTRACT OR THE PARTIES THERETO,’ Stamey,
 
 776 So.2d at 91 (capitalization in original; emphasis added), this Court will proceed to determine whether arbitration may be compelled under the doctrine of equitable estoppel.
 

 “Conversely, if the language of the arbitration provision is party specific and the description of the parties does not include the nonsignatory, this Court’s inquiry is at an end, and we will not permit arbitration of claims against the nonsignatory.
 
 See Jim Burke Auto., Inc. v. McGrue,
 
 826 So.2d 122, 131 (Ala.2002) (affirming the trial court’s order denying a nonsignatory’s motion to compel arbitration where the arbitration agreement was between ‘you [a signatory plaintiff] and us [a signatory defendant] or our employees, agents, successors or assigns’) (bracketed language added);
 
 Ex parte Lovejoy,
 
 790 So.2d 933, 938 (Ala.2000) (issuing a writ of mandamus directing a trial court to enter an order denying a nonsignatory’s motion to compel arbitration where the arbitration provision was limited to ‘all disputes or controversies between
 
 you [Lovejoy] and us [Allen Motor Company and its assignees]’)
 
 (bracketed language and emphasis in original);
 
 First Family Fin. Servs. v. Rogers,
 
 736 So.2d 553, 560 (Ala.1999) (reversing a trial court’s order granting a nonsignatory’s motion to compel arbitration where
 
 ‘you [the plaintijfs] and we [First Family] ’
 
 agreed to arbitrate and the arbitration provision elsewhere stated that it applied to ‘all claims and disputes
 
 between you [the plaintiffs] and us [First Family],’
 
 and furthermore stated that it applied to ‘any claim or dispute ... between
 
 you [the plaintiff] and any of our [First Family’s] employees or agents, any of our affiliate corporations, and any of their employees or agents
 
 ’) (bracketed language and emphasis in original); and
 
 Med Center Cars,
 
 727 So.2d at 19 (affirming a trial court’s order denying nonsignatories’ motions to compel arbitration where the arbitration provisions were limited to disputes and controversies ‘BETWEEN BUYER AND SELLER’) (capitalization in original).”
 

 934 So.2d at 380-81.
 

 We must initially determine if “the arbitration provision contains sufficiently broad language that indicates that the non-signatory was contemplated as a party.”
 
 Smith,
 
 934 So.2d at 380. Clearly, the language of the arbitration clause in this case is not “party specific.”
 
 See id.
 
 at 381. In fact, the language of the arbitration clause — “All disputes hereunder shall be resolved by binding arbitration in accordance with rules of the American Arbitration Association” — in no way limits the persons and/or entities who may seek to
 
 *512
 
 enforce the arbitration clause. Thus, although the evidence presented to the trial court establishes that the only parties to the contract were
 
 Atelier Custom Homes, L.L.C.,
 
 and the Jenkinses,
 
 [4]
 
 the arbitration clause contains sufficiently broad language indicating that nonsignatories Atelier Homes, Inc., and Wallace were contemplated as parties.
 
 See id.
 
 at 380. Accordingly, we will review the propriety of the trial court’s order compelling arbitration of the Jenkinses’ claims against Atelier Homes, Inc., and Wallace.
 

 This Court will enforce an arbitration provision in a contract to which the party moving for arbitration is not a signatory in either of two instances. The first instance involves a “ ‘variation on the theory of “equitable estoppel.” ’ ”
 
 Fountain v. Ingram,
 
 926 So.2d 333, 335 (Ala.2005) (quoting
 
 ECS, Inc. v. Goff Group, Inc.,
 
 880 So.2d 1140, 1145 (Ala.2003)). The second instance “ ‘ “arises from a third-party-beneficiary theory that affords the [nonsigna-tory] all the rights and benefits, as well as the burdens of that contract, including those associated with arbitration.” ’ ”
 
 Fountain,
 
 926 So.2d at 335 (quoting
 
 ECS, Inc.,
 
 880 So.2d at 1145, quoting in turn
 
 Ex parte Stamey,
 
 776 So.2d 85, 89 (Ala.2000)).
 

 1. Third-Party-Beneficiary Exception
 

 “A party claiming to be a third-party beneficiary ‘must establish that the contracting parties intended, upon execution of the contract, to bestow a direct, as opposed to an incidental, benefit upon the third party.’ ”
 
 Stamey,
 
 776 So.2d at 92 (quoting
 
 Weathers Auto Glass, Inc. v. Alfa Mut. Ins. Co.,
 
 619 So.2d 1328, 1329 (Ala.1993)).
 

 Atelier Homes, Inc., and Wallace have not contended, either in the trial court or on appeal, that they may enforce the arbitration clause under the third-party-beneficiary exception. Thus, the third-party-beneficiary exception provides no basis for concluding that Atelier Homes, Inc., and Wallace may compel arbitration of the Jenkinses’ claims against them.
 
 See Edwards v. Costner,
 
 979 So.2d 757, 763-64 (Ala.2007) (“Edwards and Edwards Motors did not argue to the trial court or to this Court that Costner was an intended third-party beneficiary at the time the arbitration agreement was signed, nor is there evidence in the record indicating that that is the case. Thus, the third-party-beneficiary exception is not applicable.”).
 

 2. Equitable Estoppel
 

 Arbitration may be compelled “ ‘under the doctrine of “intertwining,” where arbitrable and nonarbitrable claims are so closely related that the party to a controversy subject to arbitration is equitably estopped to deny the arbitrability of the related claim.’ ”
 
 Fountain,
 
 926 So.2d at 335 (quoting
 
 Conseco Fin. Corp. v. Sharman,
 
 828 So.2d 890, 893-94 (Ala.2001)). However, “[t]he concept of ‘intertwining’ necessarily presupposes that the signatory to the arbitration agreement is or will be engaged in an arbitration proceeding with the plaintiff.”
 
 Southern Energy Homes, Inc. v. Kennedy,
 
 774 So.2d 540, 545 (Ala.2000);
 
 see also Auvil v. Johnson,
 
 806 So.2d 343, 350 (Ala.2001) (“The doctrine of intertwining extends the benefits of an arbitration agreement to a nonsignatory only if the claims against him are intertwined with the claims against a signatory who is going to arbitration.”);
 
 Sharman,
 
 828 So.2d at 893-94 (“[T]he doctrine of intertwining does not apply when there is no ongoing arbitration between the parties to the arbitration agreement.”
 
 *513
 
 (citing
 
 Kennedy,
 
 774 So.2d at 545));
 
 Carriage Homes v. Channell,
 
 777 So.2d 83, 86 (Ala.2000) (“This present case is like
 
 Kennedy
 
 in that there is no pending or contemplated arbitration proceeding in which the doctrine of equitable estoppel could allow [the nonsignatory] to compel the [plaintiffs] to arbitrate their claims against it.” (citing
 
 Ex parte Roberson,
 
 749 So.2d 441 (Ala.1999) (Lyons, J., concurring as to the section entitled “Agreement to Arbitrate”))). “In other words, ‘intertwining’ requires at least two threads to weave together — one cannot intertwine a single thread.”
 
 Kennedy,
 
 774 So.2d at 545.
 

 The doctrine of intertwining does not apply in this case. Here, the signatory to the contract, Atelier Custom Homes, L.L.C., was not sued by the Jenkinses; as a result, there neither is nor will there be an arbitration proceeding involving Atelier Custom Homes, L.L.C., and the Jenkinses. In other words, because Atelier Custom Homes, L.L.C., is not a party to the underlying litigation, there will be no arbitration proceeding in which the doctrine of equitable estoppel could allow Atelier Homes, Inc., and Wallace to compel the Jenkinses to arbitrate their claims against them.
 

 V. Conclusion
 

 As noted, Atelier Homes, Inc., and Wallace cannot enforce the arbitration clause under the third-party-beneficiary exception. Furthermore, Atelier Homes, Inc., and Wallace cannot enforce the arbitration clause under the doctrine of equitable es-toppel; thus, we conclude that Atelier Homes, Inc., and Wallace lack standing to enforce the arbitration clause.
 
 Cf. Anvil,
 
 806 So.2d at 350 (affirming the trial court’s denial of the motion to compel arbitration, stating that, “[b]ecause the signatory ... is not going to arbitration, the claims against it do not provide a basis for intertwining” and, thus, concluding that “Auvil[, as a nonsignatory to the arbitration agreement,] was without standing to enforce the arbitration agreement.”). Accordingly, the trial court’s order compelling arbitration of the Jenkinses’ claims against Atelier Homes, Inc., and Wallace is due to be reversed.
 
 [5]
 

 For the reasons stated above, we reverse the trial court’s order compelling arbitration of the Jenkinses’ claims against Atelier Homes, Inc., and Wallace, and we remand the case for proceedings consistent with this opinion.
 

 REVERSED AND REMANDED.
 

 COBB, C.J., and LYONS, WOODALL, STUART, BOLIN, PARKER, MURDOCK, and SHAW, JJ., concur.
 

 [1]
 

 . The trial court’s July 22, 2009, order applies only to the Jenkinses' claims against Atelier Homes, Inc., and Wallace; the order states that ”[t]his matter comes before the Court on Defendants
 
 Atelier Homes, Inc., and Frank Wallace’s Motion to Compel Arbitration and Stay Proceedings."
 
 (Emphasis added.)
 

 [2]
 

 .
 
 Barcenas construes the trial court’s August 20, 2009, order as allowing him to join Atelier Homes, Inc., and Wallace's motion to compel arbitration; he has filed a brief with this Court, asserting that, ”[i]n affirming its Order of July 22, 2009, the Circuit Court expressly ordered the lawsuit in its entirety arbitrated.” Barcenas’s brief, p. 2. However, as noted, the trial court’s August 20, 2009, order
 
 “reaffirms
 
 its Order of July 22, 2009” (emphasis added); that order applies only to the motion to compel arbitration filed by Atelier Homes, Inc., and Wallace.
 
 See supra
 
 note 1. Thus, because there is no order compelling arbitration of the Jenkinses’ claims against Barce-nas, we will consider no arguments regarding the Jenkinses’ claims against Barcenas.
 

 [3]
 

 . In their response to the motion to compel arbitration, the Jenkinses contended that the motion should be denied because, among other reasons, "[t]here is no written agreement exhibiting the [Jenkinses’] waiver of their right to a trial by jury.” However, the Jen-kinses failed to present any evidence supporting that argument. Rather, the only evidence the Jenkinses presented in their response was the affidavit of J.R. Carden, who is "the Executive Director and Custodian of Records of the Home Builders Licensure Board,” and a copy of a building permit issued by City of Huntsville to Atelier Homes, Inc., granting permission to Atelier Homes, Inc., to construct a single-family structure for the Jen-kinses. Therefore, that argument provides no basis for reversing the trial court’s judgment.
 
 See Johnson,
 
 1 So.3d at 963 (" '[0]nce the moving party has supported his or her motion to compel arbitration, the nonmovant then has the burden to present
 
 evidence
 
 tending to show that the arbitration agreement is invalid or inapplicable to the case.' ” (quoting
 
 McKay Bldg. Co. v. Juliano,
 
 949 So.2d 882, 884 (Ala.2006), citing in turn
 
 Polaris Sales, Inc. v. Heritage Imports, Inc.,
 
 879 So.2d 1129, 1132 (Ala.2003) (emphasis added)));
 
 see also Fountain Fin., Inc. v. Hines,
 
 788 So.2d 155, 159 (Ala.2000) (" ‘[MJotions and arguments of counsel are not evidence.' " (quoting
 
 Williams v. Alezo Nobel Chemicals, Inc.,
 
 999 S.W.2d 836, 845 (Tex.App.1999))).
 

 [4]
 

 . As noted, Adam Wallace testified in his affidavit that the contract was "between
 
 Atelier Custom Homes, L.L.C.,
 
 and the Jenkins [sic]." (Emphasis added.)
 

 [5]
 

 . The Jenkinses also contend that, even if this Court determines that the arbitration clause is enforceable by either of the parties moving to compel arbitration, the trial court’s order granting the motion should nonetheless be reversed because, the Jenkinses claim, Atelier Homes, Inc., and Wallace "were not licensed to build a residence for profit.” The Jenkins-es' brief, p. 22. However, because we have already concluded that Atelier Homes, Inc., and Wallace may not enforce the arbitration clause, we pretermit as unnecessary any discussion of this argument.